## CITY OF WADSWORTH

v.

## TOMER.

Wadsworth Municipal Court.

No. 95–CRB–417.

Decided Oct. 5, 1995.

---

a.  See formal decision for a discussion of the court's findings.

*Page C. Schrock III,* Wadsworth City Prosecutor, for plaintiff.

*David A. Looney,* for defendant.

JAMES L. KIMBLER, Judge.

Defendant Shawn M. Tomer is charged with possession of drug paraphernalia under Wadsworth City Ordinance 515.02, a first degree misdemeanor. He has filed a motion to suppress, alleging that the contraband was seized in violation of his rights under the Ohio and federal Constitutions.

Based on the evidence heard, the court makes the following findings of fact:

On August 7, 1995, the defendant was stopped for a minor traffic violation by Ptl. David Dorland of the Wadsworth Police Department. The defendant was given a written warning by the officer, who then asked the defendant if he could search the vehicle. The request was made because the officer felt that the defendant had some of the characteristics of drug users/traffickers. The defendant consented to the request, and the contraband was found. It is undisputed that the request for the search came after the traffic stop was completed and also undisputed that the officer did not use the language recently prescribed by the Ohio Supreme Court in *State v. Robinette* (1995), 73 Ohio St.3d 650, 653 N.E.2d

695. Furthermore, the defendant did not present any evidence establishing that his consent was not voluntarily given. The only issue in this case is whether *Robinette* applies to cases arising prior to September 6, 1995, the date the decision was announced?

■ *Robinette* establishes a "bright line" rule that persons stopped for a traffic violation must be informed that they are free to go prior to any attempt to get their consent for a search unless there are specific and articulable facts justifying a continued detention. *Robinette* is a clear break from the past. *Robinette* establishes a prophylactic rule, the breach of which can lead to exclusion of evidence that would otherwise be probative and relevant.

■ The goal of the exclusionary rule is not to award defendants, but to deter police. Deterrence depends on police officers being aware that violation of a constitutional standard will lead to exclusion of evidence. While the premise that the exclusionary rule deters police conduct is debatable, it is obvious that there can be no deterrence when the rule is established *after* the facts to which its application is sought. When Ptl. Dorland stopped the defendant, he had no way of knowing that approximately a month later the Ohio Supreme Court would announce its decision in *Robinette*. Retroactive application of *Robinette* cannot deter Ptl. Dorland from seeking consent to search without following *Robinette,* since the search has already taken place. Therefore this court declines to give *Robinette* retroactive application without specific holdings from the Ninth District Court of Appeals or the Ohio Supreme Court requiring it to do so.

This court's holding is supported by the language of the United States Supreme Court in *United States v. Leon* (1984), 468 U.S. 897, 912, 104 S.Ct. 3405, 3414–3415, 82 L.Ed.2d 677 in which it was pointed out that no Fourth Amendment decision marking a clear break from the past has been given retroactive application.

Consequently the defendant's motion is overruled.

So ordered.

*Motion overruled.*